# In the United States Court of Federal Claims

### No. 14-807C
### Filed: May 19, 2015

* * * * * * * * * * * * * * * * *
|  |  |
|---|---|
| | * |
| **OLD VETERAN CONSTRUCTION, INC.,** | * |
| | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * |
| | * |
| **UNITED STATES,** | * |
| | * |
| **Defendant.** | * |
| | * |

* * * * * * * * * * * * * * * *

**Summary Judgment; Type I Differing Site Conditions.**

**Richard P. Reichstein**, Reichstein Law, Chicago, IL, for plaintiff.

**Lauren Springer Moore**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her were **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch and **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, Civil Division.

## O P I N I O N

Plaintiff, Old Veteran Construction, Inc. (OVC), filed a short complaint in this court on September 3, 2014, alleging it is entitled to damages in the amount of $321,561.00 because, contrary to its expectations, it was required "to dig out and haul off the existing lean clay and replace it with gravel from an outside source" in order to construct the Army Reserve Center that it had been contracted to build. Plaintiff claims the solicitation made clear that the contractor should be able "to use the on-site lean clay as load bearing support for the building," but in fact, it was not able to do so. Plaintiff argues that it was entitled to rely on the "positive statements in the specifications" and the drawings provided to guide bidders, "regardless of contractual provisions requiring the contractor to make investigations." Plaintiff contends, therefore, that it is entitled to recover the costs it incurred when the on-site lean clay proved unsuitable to use as load bearing support for the building. Plaintiff submitted a certified claim to the contracting officer, which was denied in full, and the contracting officer declined to pay plaintiff any increase in the contract price. Thereafter, plaintiff filed suit in this court, to which defendant has responded by filing a motion for summary judgment.

**FINDINGS OF FACT**

The United States Army Corps of Engineers – Louisville (Army Corps) issued Solicitation No. W912QR-11-R-0029 on April 7, 2011, seeking the construction of an Army Reserve Center in Quincy, Illinois. The solicitation included section 00 31 32, which contained a "Report of Geotechnical Investigation," dated December 20, 2010, which contained information regarding "Engineer Fill." Initially, contractors' proposals were due on or before May 10, 2011 and the Government was to have 120 days following the due date to accept a bidder's offer.[1] The Army Corps issued Amendment 002 to the solicitation, which changed the due date for proposals to May 19, 2011. OVC submitted a proposal on the due date and subsequently during discussions, submitted two revised proposals in response to letters OVC received from the contracting officer. On June 27, 2011, the contracting officer sent OVC a letter requesting a "final proposal revision in accordance with Federal Acquisition Regulation (FAR) 15.307" by July 1, 2011. OVC submitted its final proposal on June 30, 2011.

On September 20, 2011, the agency awarded the contract to OVC for $13,899,681.00, and on October 7, 2011, the Army Corps sent OVC a notice to proceed. OVC submitted a preliminary schedule for the project to the contracting officer on or about December 30, 2011, and then a revised schedule on or about January 13, 2012. OVC's project schedule estimated that excavation work would occur from December 24, 2011 through January 22, 2012. OVC actually began the excavation and fill work on January 13, 2012.

On January 23, 2012, OVC submitted a Request for Information to the contracting officer, which stated:

> In accordance with the above specification section, OVC preformed [sic] a proof roll test on the building pad of the Training Center last Wednesday 1-18-12. Due [to] the time of year we found the clay to be saturated with water and the ground to be frozen. Given the current moisture content of the soil it is not suitable for placement under the building, resulting in a failed proof roll. As a result of the [sic] this failure our Geotechnical consultant has recommended that the entire building pad be built up with 3" (RR1B or RR2B) stone in lieu of the onsite clay. Given the time from bid to award of this project OVC could not have anticipated the required installation of the 3" stone given that the Geotechnical specification provided by G2 Consulting group only recommends the use of engineered structural fill if construction was to be completed during the winter months. Attached is a recommendation from Geotechnics Testing supporting the installation of the

---

[1] In a June 16, 2011 letter from a contracting officer to OVC, the contracting officer reduced the amount of time in which the government committed to accepting an offer from 120 days after the proposal was due to 90 days after the proposal was due.

3" stone for your review and approval.[2] If this alternate method is acceptable please advise if these additional costs will be considered a change order to the base contract.

Larry Wernle, the contracting officer's representative, replied to plaintiff's Request for Information that either of the substitutions OVC proposed were acceptable, "but only if performed at no additional cost to the Government."

On February 14, 2012, OVC submitted a Request for Equitable Adjustment, based on the "fact OVC bid the project anticipating favorable weather conditions, given that the award date was never identified." Plaintiff referenced the initial bid date, May 19, 2011, and suggested that since the bids were submitted in May 2011, OVC was hopeful "that an award would be sent out within the month to come and the earthwork would take place during the recommended summer months as stated in the Geotechnical report." The contract, however, was awarded on September 20, 2011, and, according to plaintiff, OVC was "taxed with the most unfavorable time to begin excavation," hindering its ability to use "the onsite lean clay as structural fill." OVC also noted that OVC "had no option but to begin the work during the winter months. Although, it is clearly stated by G2 Consulting Group[3] in their report that the earthwork could not be completed during the winter months without substantial costs impacts." OVC reasoned, "[s]ince, only a recommendation was given to import granular structural fill OVC strongly believes that if we had had [sic] acknowledged this recommendation to import granular fill in our original bid submission, we would not have been competitive with other bidding General Contractors."

In a letter, dated March 30, 2012, Donald Peterson, identified as a government resident engineer and an administrative contracting officer, responded to OVC's February 14, 2012 request, explaining that OVC's Request for Equitable Adjustment has "***no merit***." (emphasis in original). Mr. Peterson stated that the placement of the stone was "within the scope of work required by the As-Awarded Contract." The administrative contracting officer also noted that while plaintiff referenced the May 2011 bid date, it failed to acknowledge that the final proposal revision occurred on July 1, 2011, and at that time, the government was entitled to a specified number of additional days to consider and

---

[2] Although plaintiff stated in its Request for Information that a recommendation from plaintiff's geotechnical consultant, Geotechnics Soil and Material Testing (Geotechnics), was attached, this recommendation does not appear to have been provided to the court. Only two letters authored by OVC's geotechnical consultant are attached to plaintiff's complaint. Exhibit 10 to the complaint is an email from Ronald Craven of Geotechnics to S.K. Lee at OVC, dated March 29, 2012. Exhibit 12 to the complaint is a letter, also from Ronald Craven of Geotechnics, to Daniel Gil at OVC, dated December 7, 2012. Because both of these documents post-date the Request for Information, it seems improbable that either is the report to which plaintiff referred in its Request for Information.

[3] G2 Consulting Group is the company that prepared the Report of Geotechnical Investigation which was included with the solicitation.

accept the proposal, and that the contract was awarded within the "Bid Acceptance Period."[4]

On August 30, 2013, OVC submitted a certified claim titled "Proposal for Equitable Adjustment of Contract No. W912QR-11-C-0049," and included certification language, seeking payment of $321,561.00. On March 26, 2014, the contracting officer, Gloria Ritter, issued a final decision denying OVC's claim in its entirety.[5] In her final decision, the contracting officer stated:

> You made an error in your calculation as to when you would be able to start working on the Quincy Army Reserve Center. You unreasonably assumed that if awarded the Contract you would start work on ARC during the summer months of 2011. In reality, you started work on the project in January of 2012. Because you started in the winter, you claim you are entitled to additional costs due to alleged government delay. However, no such delay occurred. You were on notice by the solicitation, which you signed, that a winter start date was very likely. You should have calculated your proposal to include the likelihood of a winter start date instead of assuming a definite summer start date.

The contracting officer also indicated that OVC was "clearly on notice" that excavation work likely would begin during the winter months and that "your [OVC] assumption that you would be able to start in the summer months was entirely unreasonable." In addition, despite the changes in proposal submission times and the 90 day acceptance period, the contracting officer stated, "you had several chances to revise your proposal but failed to do so," and "submitted the same price you [OVC] had submitted previously." The contracting officer also noted that under the terms of the solicitation, OVC had the right to withdraw its proposal at "any time before it was accepted," and that it was clear to all that additional time before work could begin would be required for bond approval. The contracting officer continued, "[s]ince you calculated your proposal based on your

---

[4] The letter from Mr. Peterson to OVC states that the contract was awarded "within the 120 day Bid Acceptance Period." As noted above, in a letter from a contracting officer to OVC dated June 16, 2011, the Bid Acceptance Period was reduced from 120 days to 90 days, and the contract was awarded timely within 90 days of the deadline for contractors' final submissions.

[5] Although OVC presented three grounds for relief in its certified claim to the contracting officer, only the one basis for relief addressed in this opinion is included in plaintiff's complaint filed in this court. Plaintiff's complaint in this court did not include claims for charges based on an alleged requirement to order contract fixtures in advance of the government exercising an option and alleged charges arising out of Change Order A00003 issued during contract performance, which plaintiff claimed resulted in additional indirect and direct costs. Nonetheless, plaintiff is requesting the same dollar amount in this court as it requested from the contracting officer in its certified claim for all three claims.

unreasonable assumption, you must bear the costs associated with that assumption. When a contractor places a proposal on a government project, it assumes the basic obligation to accurately propose according to its ability."

In evaluating whether OVC had proven it was entitled to relief under a differing site conditions claim, the contracting officer stated, "[a] reasonably prudent contractor would not have interpreted the contract documents as promising a summer start date." The contracting officer determined that "the site conditions you encountered were exactly the same as the geological [geotechnical] report claimed they would be. The geological report clearly informed you about the soil conditions of the site during both winter and summer months." The contracting officer further stated:

> The report gave you sufficient information concerning the soil conditions in the winter and the summer. In addition, there is nothing in this report that would lead a reasonably prudent contractor to conclude that summer conditions would necessarily prevail at the time of excavation. Therefore, the winter soil conditions were entirely foreseeable on your part. Because the soil conditions were foreseeable, a reasonably prudent contractor would have prepared for a potential winter excavation.

> You failed to act as a reasonably prudent contractor in interpreting the contract documents. You also failed to prove that the actual subsurface conditions you encountered were reasonably unforeseeable. Therefore, you are not entitled to relief under the differing site conditions clause of the contract.

Finally, the contracting officer indicated, "[t]he Government had no reason to doubt that you had competently calculated your proposal for this contract. Your proposal received adequate ratings, and your proposal price was similar to the prices produced by the other bidders." Following receipt of the contracting officer's final decision, plaintiff timely filed a complaint in this court on September 3, 2014, and defendant filed a motion for summary judgment, which plaintiff opposes.

## DISCUSSION

Rule 56 of the Rules of the United States Court of Federal Claims (RCFC) (2014) is similar to Rule 56 of the Federal Rules of Civil Procedure in language and effect. Both rules provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); Fed. R. Civ. P. 56(a) (2015); see also Alabama v. North Carolina, 560 U.S. 330, 344 (2010); Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Biery v. United States, 753 F.3d 1279, 1286 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Ladd v. United States, 713 F.3d 648, 651 (Fed. Cir. 2013); Minkin v. Gibbons, P.C., 680 F.3d 1341, 1349 (Fed. Cir. 2012); Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1309–10 (Fed. Cir. 2012); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d 1365, 1372 (Fed. Cir.), reh'g and

reh'g en banc denied (Fed. Cir. 2012); Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1325 (Fed. Cir.), reh'g denied (Fed. Cir. 2010); Consol. Coal Co. v. United States, 615 F.3d 1378, 1380 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 131 S. Ct. 2990 (2011); 1st Home Liquidating Trust v. United States, 581 F.3d 1350, 1355 (Fed. Cir. 2009); Arko Exec. Servs., Inc. v. United States, 553 F.3d 1375, 1378 (Fed. Cir. 2009); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283 (Fed. Cir. 2008), reh'g and reh'g en banc denied, 556 F.3d 1329 (Fed. Cir. 2009); Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2005); Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1370–71 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005); Mata v. United States, 114 Fed. Cl. 736, 744 (2014); Leggitte v. United States, 104 Fed. Cl. 315, 317 (2012); Arranaga v. United States, 103 Fed. Cl. 465, 467–68 (2012); Cohen v. United States, 100 Fed. Cl. 461, 469 (2011); Boensel v. United States, 99 Fed. Cl. 607, 610 (2011).

A fact is material if it will make a difference in the result of a case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Marriott Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968 (Fed. Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248); Mata v. United States, 114 Fed. Cl. at 744; Arranaga v. United States, 103 Fed. Cl. at 467-68; Thompson v. United States, 101 Fed. Cl. 416, 426 (2011); Cohen v. United States, 100 Fed. Cl. at 469. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 247–48; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001); Gorski v. United States, 104 Fed. Cl. 605, 609 (2012); Walker v. United States, 79 Fed. Cl. 685, 692 (2008); Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied, 361 U.S. 843 (1959), reh'g denied, 361 U.S. 941 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; see, e.g., Schlup v. Delo, 513 U.S. 298, 332 (1995); Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed. Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment."); TigerSwan, Inc. v. United States, 118 Fed. Cl. 447, 451 (2014); Dana R. Hodges Trust v. United States, 111 Fed. Cl. 452, 455 (2013); Cohen v. United States, 100 Fed. Cl. at 469–70; Boensel v. United States, 99 Fed. Cl. at 611; Macy Elevator, Inc. v. United States, 97 Fed. Cl. 708, 717 (2011); Dick Pacific/GHEMM, JV ex rel. W.A. Botting Co. v. United States, 87 Fed. Cl. 113, 126 (2009); Johnson v. United States, 49 Fed. Cl. 648, 651 (2001), aff'd, 52 F. App'x 507 (Fed. Cir. 2002), published at 317 F.3d 1331 (Fed. Cir. 2003). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250–52; Jay v. Sec'y of Dep't of Health and Human Servs., 998 F.2d 979, 982 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1993); Leggitte v. United States, 104 Fed. Cl. at 316. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Advanced Fiber Techs. (AFT) Trust

v. J & L Fiber Servs., Inc., 674 F.3d at 1372; Marriott Int'l Resorts, L.P. v. United States, 586 F.3d at 968; Am. Seating Co. v. USSC Grp., Inc., 514 F.3d 1262, 1266 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2008); Rothe Dev. Corp. v. U.S. Dep't of Def., 262 F.3d 1306, 1316 (Fed. Cir. 2001); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553 n.3 (Fed. Cir. 1996). In such cases, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

In appropriate cases, summary judgment:

saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

Dehne v. United States, 23 Cl. Ct. 606, 614–15 (1991) (quoting Pure Gold, Inc. v. Syntex, (U.S.A.) Inc., 739 F.2d 624, 626 (Fed. Cir. 1984)), vacated on other grounds, 970 F.2d 890 (Fed. Cir. 1992) (citation omitted); see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 806 (Fed. Cir. 1999) ("The purpose of summary judgment is not to deprive a litigant of a trial, but to avoid an unnecessary trial when only one outcome can ensue."); Metric Constr. Co., Inc. v. United States, 73 Fed. Cl. 611, 612 (2006).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1244 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 555 U.S. 812 (2008); Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1109 (2002); Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999); TigerSwan, Inc. v. United States, 118 Fed. Cl. at 451; Stephan v. United States, 117 Fed. Cl. 68, 70 (2014); Gonzales-McCaulley Inv. Group, Inc. v. United States, 101 Fed. Cl. 623, 629 (2011). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. See Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587–88; Yant v. United States, 588 F.3d 1369, 1371 (Fed. Cir. 2009), cert. denied, 131 S. Ct. 69 (2010); Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co., 272 F.3d 1365, 1369 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 293 F.3d 1364 (Fed. Cir. 2002), cert. denied, 539 U.S. 957 (2003); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Wanlass v. Fedders Corp., 145 F.3d 1461, 1463 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1998); see also Am. Pelagic Co. v. United States, 379 F.3d at 1371 (citing Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1345–46 (Fed. Cir. 2000)); Dana R. Hodges Trust v. United States, 111 Fed. Cl. at 455; Boensel v. United States, 99 Fed. Cl. at 611 ("'The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 255)

(citing <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. at 587–88; <u>Casitas Mun. Water Dist. v. United States</u>, 543 F.3d at 1283; <u>Lathan Co. Inc. v. United States</u>, 20 Cl. Ct. 122, 125 (1990))); <u>see also Am. Seating Co. v. USSC Grp., Inc.</u>, 514 F.3d at 1266–67; <u>Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.</u>, 200 F.3d at 807. "However, once a moving party satisfies its initial burden, mere allegations of a genuine issue of material fact without supporting evidence will not prevent entry of summary judgment." <u>Republic Sav. Bank, F.S.B. v. United States</u>, 584 F.3d 1369, 1374 (Fed. Cir. 2009); <u>see also Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 247–48.

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986); <u>see also Riley & Ephriam Constr. Co. v. United States</u>, 408 F.3d 1369, 1371 (Fed. Cir. 2005); <u>Crown Operations Int'l Ltd. v. Solutia Inc.</u>, 289 F.3d 1367, 1377 (Fed. Cir.), <u>reh'g denied</u> (Fed. Cir. 2002); <u>Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.</u>, 109 F.3d 739, 741 (Fed. Cir.) (quoting <u>Conroy v. Reebok Int'l, Ltd.</u>, 14 F.3d 1570, 1575 (Fed. Cir. 1994), <u>reh'g denied and en banc suggestion declined</u> (Fed. Cir. 1995)), <u>reh'g denied and en banc suggestion declined</u> (Fed. Cir. 1997); <u>Lockwood v. Am. Airlines, Inc.</u>, 107 F.3d 1565, 1569 (Fed. Cir. 1997); <u>Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.</u>, 200 F.3d at 807; <u>RQ Squared, LLC v. United States</u>, No. 12-527C, 2015 WL 170230, at *6 (Fed. Cl. Jan. 14, 2015). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322; <u>see also Wavetronix LLC v. EIS Elec. Integrated Sys.</u>, 573 F.3d 1343, 1354 (Fed. Cir. 2009); <u>Long Island Sav. Bank, FSB v. United States</u>, 503 F.3d at 1244; <u>Florida Power & Light Co. v. United States</u>, 375 F.3d 1119, 1124 (Fed. Cir. 2004); <u>Schoell v. Regal Marine Indus., Inc.</u>, 247 F.3d 1202, 1207 (Fed. Cir. 2001); <u>Am. Airlines, Inc. v. United States</u>, 204 F.3d 1103, 1108 (Fed. Cir. 2000); <u>Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.</u>, 200 F.3d at 807; <u>Rasmuson v. United States</u>, 109 Fed. Cl. 267, 271 (2013). However, "a non-movant is required to provide opposing evidence under Rule 56(e) only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law." <u>Saab Cars USA, Inc. v. United States</u>, 434 F.3d 1359, 1369 (Fed. Cir. 2006).

"Questions of law are particularly appropriate for summary judgment." <u>Oenga v. United States</u>, 91 Fed. Cl. 629, 634 (2010) (citing <u>Dana Corp. v. United States</u>, 174 F.3d 1344, 1347 (Fed. Cir. 1999) ("Summary judgment was appropriate here [in <u>Dana Corp.</u>] because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law.  Moreover, on each issue one party or the other is entitled to judgment as a matter of law.")); <u>see also Santa Fe Pac. R.R. v. United States</u>, 294 F.3d 1336, 1340 (Fed. Cir. 2002) ("Issues of statutory interpretation and other matters of law may be decided on motion for summary judgment.").

Defendant argues that summary judgment is appropriate in the above captioned case because, it claims, "there are no genuine issues of material fact in dispute and defendant is entitled to judgment as a matter of law." Plaintiff disagrees, arguing that there

are multiple questions of fact. Plaintiff states, "the Government specifications for moisture content and the OVC hired engineering firm both provided different numbers for moisture content. Who was right is an issue of fact." Plaintiff next alleges, "[t]he government disclaims any responsibility for the accuracy, true locations, and extent of geological investigation. These are questions of fact and law." (internal citation omitted). In its response to defendant's motion for summary judgment, plaintiff also makes a number of additional allegations. For example, plaintiff argues that the government repeatedly asked OVC to "re-evaluate its price proposal" and that "these bargaining proposals guaranteed that the project would shift to the winter months." Plaintiff also states, although without providing sufficient support, that according to its project manager, the on-site soil could not have been "used to support the structure" during the summer, "due to high moisture content . . . ."

The factual disputes plaintiff tries to identify do not preclude summary judgment in this case. In order for the court to rule on plaintiff's claim, it is not necessary for the court to make a finding regarding the actual specifications for the moisture content of the soil at the construction site. The soil conditions plaintiff encountered were anticipated in the government's geotechnical report, which described projected conditions during several seasons, including summer and winter. Plaintiff alleges that, "[t]he costs occasioned by OVC to dig out and haul off the existing lean clay and replace it with gravel from an outside source necessitated a Change Order in the amount of $321,561," and that the contracting officer declined any increase in payment above the awarded contract price. Other than alleging it is entitled to this increase in price, plaintiff never cites an underlying contractual or legal basis, nor does it define the precise nature of its claim. Defendant characterizes plaintiff's claim as a likely, attempted, Type I differing site conditions claim. In its motion for summary judgment, defendant states:

> OVC's claim cites to and quotes FAR 52.236-3; however, it states that this clause is the FAR's Differing Site Conditions clause, FAR 52.236-2. FAR 52.236-3 is titled "Site Investigation and Conditions Affecting the Work." That clause does not support a claim by OVC against the Army. Instead, FAR 52.236-3 states that the contractor has taken reasonable and prudent steps to accurately ascertain the conditions of contract performance. It also states that "the Government assumes no responsibility for any conclusions or interpretations made by the Contractor based on the information made available by the Government." OVC's complaint filed with this Court on September 3, 2014 does not specifically mention the Differing Site Conditions clause, FAR 52.236-2; however, OVC alleges facts similar to those alleged in its claim. For purposes of this motion, we interpret OVC's claim and complaint [before this court] to assert a claim against the Government pursuant to FAR 52.236-2, the contract's Differing Site Conditions clause.

(internal citations omitted). In its response to defendant's motion for summary judgment, plaintiff does not dispute defendant's characterization of plaintiff's claim as a Differing Site Conditions clause claim. Moreover, plaintiff does not articulate an alternate legal theory

for recovery in either its complaint or in its response to defendant's motion for summary judgment.[6]

According to defendant, it appears, "OVC's [sic] alleges that it is entitled to the cost of providing granular fill pursuant to the contract's Differing Site Conditions clause. FAR 52-236-2, 'Differing Site Conditions' was incorporated into the contract." FAR 52.236-2 states:

> (a) The Contractor shall promptly, and before the conditions are disturbed, give a written notice to the Contracting Officer of (1) subsurface or latent physical conditions at the site which differ materially from those indicated in this contract, or (2) unknown physical conditions at the site, of an unusual nature, which differ materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract.

> (b) The Contracting Officer shall investigate the site conditions promptly after receiving the notice. If the conditions do materially so differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performing any part of the work under this contract, whether or not changed as a result of the conditions, an equitable adjustment shall be made under this clause and the contract modified in writing accordingly.

FAR 52.236-2 (1984). Regarding the requirements for when differing site conditions are present, defendant offers the following:

> A Type I differing site conditions occurs when the "[s]ubsurface or latent physical conditions at the site . . . differ materially from those indicated in the contract." A Type II differing site condition occurs when there are "[u]nknown physical conditions at the site, of an unusual nature, which differ materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract." Neither OVC's claim nor complaint states which type of differing site condition it is asserting. OVC's complaint, however, indicates that OVC is asserting a Type I differing site condition claim because OVC refers to known conditions referenced in the geotechnical report.

---

[6] If plaintiff intended to be making a common law breach of contract claim, as opposed to a claim under the Differing Site Conditions clause, plaintiff would have been required to demonstrate that it satisfied the same requirements in order to recover. See Int'l Tech. Corp. v. Winter, 523 F.3d 1341, 1348 (Fed. Cir.) ("The same requirements apply whether the contractor asserts such a common law breach claim or a Type I claim under the Differing Site Conditions clause, a clause which is common in government construction contracts, but was not included in ITC's contract with the government."), reh'g denied (Fed. Cir. 2008).

(internal citation omitted).

　　To prevail on a claim for a Type I differing site condition, a contractor must prove, by a preponderance of the evidence, that the conditions encountered at the project site materially differed from those represented in the contract documents, the conditions must have been reasonably unforeseeable to the contractor based on the information available to the plaintiff at the time it submitted its bid, and the plaintiff must show that it reasonably relied upon its interpretation of the contract and contract-related documents. Finally, the plaintiff must show that, as a consequence of the difference between the expected and the encountered conditions, the plaintiff suffered damages. See Int'l Tech. Corp. v. Winter, 523 F.3d at 1348–49; Renda Marine, Inc. v. United States, 509 F.3d 1372, 1376 (Fed. Cir. 2007), reh'g and reh'g en banc denied (Fed. Cir. 2008); Comtrol, Inc. v. United States, 294 F.3d 1357,1362 (Fed. Cir. 2002); H.B. Mac, Inc. v. United States, 153 F.3d 1338, 1345 (Fed. Cir. 1998); Stuyvesant Dredging Co. v. United States, 834 F.2d 1576, 1581 (Fed. Cir. 1987).

　　The threshold issue of whether the plaintiff is eligible for an equitable adjustment for a Type I differing site conditions claim depends on the conditions indicated in the contract documents. See Int'l Tech. Corp. v. Winter, 523 F.3d at 1348 ("[T]he contractor must prove that a reasonable contractor reading the contract documents as a whole would interpret them as making a representation as to the site conditions." (citing Renda Marine, Inc. v. United States, 509 F.3d at 1376; H.B. Mac, Inc. v. United States, 153 F.3d at 1345)); Renda Marine, Inc. v. United States, 509 F.3d at 1376 ("In order to be eligible to recover for a Type I differing site condition, a contractor must first prove, as a threshold matter, that the contract contained some identification of the conditions to be encountered at the site. The contractor must then prove by a preponderance of the evidence that the conditions encountered during the contract performance differed materially from the conditions indicated in the contract. To carry this burden, the contractor must demonstrate that the conditions encountered were not reasonably foreseeable in light of all information available to the contractor when bidding, that the contractor reasonably relied upon its original interpretation of the contract, and that the contractor suffered damages as a result of the material variation between the conditions expected and those encountered." (citing H.B. Mac, Inc. v. United States, 153 F.3d at 1345; Stuyvesant Dredging Co. v. United States, 834 F.2d at 1581; P.J. Maffei Bldg. Wrecking Corp. v. United States, 732 F.2d 913, 916 (Fed. Cir. 1984)) (internal citations omitted); Randa/Madison Joint Venture III v. Dahlberg, 239 F.3d 1264, 1274 (Fed. Cir. 2001) ("This court has previously explained that 'in order to establish entitlement to an equitable adjustment by reason of a Type I differing site condition[,] . . .  the contractor must prove, by a preponderance of the evidence, that the conditions indicated in the contract differ materially from those it encounters during performance.'"(quoting H.B. Mac, Inc. v. United States, 153 F.3d at 1345) (alterations in Randa/Madison Joint Venture III)); P.J. Maffei Bldg., Wrecking Corp. v. United States, 732 F.2d at 916 ("As a threshold matter, then, this kind [Type I] of Differing Site Conditions claim is dependent on what is 'indicated' in the contract."); Round Place, Inc. v. United States, 31 Fed. Cl. 749, 751 (1994) ("An express representation in a contract specification or drawing furnished by the government to the contractor depicting specific conditions on a site can result in Type I Differing Site Conditions, if other conditions are encountered during construction."). The United States Court of Appeals for the Federal Circuit has

made it clear that "[a] contractor cannot be eligible for an equitable adjustment for changed conditions unless the contract indicated what those conditions would supposedly be." P.J. Maffei Bldg. Wrecking Corp. v. United States, 732 F.2d at 916; see also H.B. Mac, Inc. v. United States, 153 F.3d at 1345 ("Determining whether a contract contained indications of a particular site condition 'is a matter of contract interpretation and thus presents a question of law'. . . ." (quoting P.J. Maffei Bldg. Wrecking Corp. v. United States, 732 F.2d at 916)) (internal citation omitted).

Plaintiff has not demonstrated that the conditions it encountered differed materially from the conditions indicated in the contract. The Report of Geotechnical Investigation, which was included with the solicitation, specified that the conditions likely would vary between the seasons. The report stated:

> The on-site lean clay will not be suitable for use as engineered fill during the colder and wetter months of late fall, winter, and spring due to difficulty in drying the material to obtain the optimum moisture content. We recommend using an imported granular fill if earthwork operations are performed during these months. Granular fill appears to be locally available from several sources in the Quincy area . . . . Alternatively, consideration may be give[n] to stabilizing the lean clay soils with hydrated lime to dry the lean clay and allow for use as engineered fill. If possible, we strongly recommend performing the earthwork operations during the summer months to limit the costs associated with importing granular fill and/or stabilizing the on-site lean clay.

The report later reiterated that the conditions would vary and that they would be less favorable for beginning construction during the winter, noting:

> As stated previously, we strongly recommend performing earthwork operations during the summer months due to the difficulty in moisture conditioning the on-site lean clay for use as engineered fill and maintaining a stable subgrade. Earthwork performed during the wetter and colder winter months will be more difficult and higher costs should be anticipated during these months.

When OVC began the excavation work in January, 2012 following contract award, bond approval,[7] and submission by OVC of a proposed schedule in which OVC projected construction would begin on December 24, 2011, the soil plaintiff encountered was too moist for use for construction under the building. The soil conditions when construction

---

[7] According to the contracting officer, prior to beginning excavation, the contractor was required to receive bond approval and then to submit the bond approval to the government for further approval. The contracting officer also stated in the final decision that the contractor knew it would take up to 60 days to receive the necessary government approvals and the contractor was late in submitting the required documents to the government for review, further delaying plaintiff's ability to begin construction.

began, however, were not at odds with the conditions described in the contract documents. Rather, the conditions were precisely as predicted for January. Plaintiff, therefore, has not satisfied the first element of a Type I differing site conditions claim, that the conditions encountered differed materially from those described in the contract documents or from the time schedule plaintiff could have calculated, based on the time sequence of solicitation issuance, discussions, and contract award. Plaintiff has not demonstrated that the conditions it encountered were unforeseeable, based on all the information available to plaintiff when plaintiff had its last opportunity to revise its proposal before it submitted its final bid proposal on June 30, 2011. Given the inclusion of language in the Report of Geotechnical Investigation regarding the unsuitability of the lean clay, because the soil would be too moist for use as engineer fill during late fall, winter, and spring, plaintiff's interpretation that the need to remove the lean clay and replace it with other granular fill materials constituted a change to the contract is not substantiated. Plaintiff's statement that it expected to complete the excavation work during the summer, given the initial proposal submission date of May 19, 2011, also is unreasonable. Final proposals were not due until July 1, 2011, at which time the government was entitled to 90 days to consider the proposals and make an award. When OVC submitted its final proposal on June 30, 2011, it was aware that the government might not award the contract before September 29, 2011 (90 days after the submission deadline of July 1, 2011) and, therefore, should have known that summer excavation was unlikely, at best. Additionally, the Report of Geotechnical Investigation described ground conditions during warm weather months, as well as during cold weather months, indicating that the contract contemplated that construction work might take place during any season. Plaintiff could have projected that it would not be able to begin work during the summer and could have adjusted its bid accordingly, prior to its final submission on June 30, 2011. OVC, however, did not revise its bid once the fall and winter months approached, even once it was clear that summer excavation was unlikely.

As indicated above, plaintiff argues that the parties' disagreement with respect to the government's "responsibility for the accuracy, true locations, and extent of geological investigation" is a disputed material fact. Under the terms of the solicitation, however, plaintiff was alerted to conduct an independent investigation of the site conditions. The first page of solicitation section 00 31 32, Geotechnical Data, states:

1.1 USE OF INFORMATION PROVIDED

A. Information included in the Geotechnical Report, as incorporated in this Project Manual, is provided for reference only and is not part of the Contract Documents.

B. Bidders are urged to examine the information provided, make their own investigation of the Site before bidding, and obtain additional geotechnical information should they desire.

. . .

1.2 INTERPRETATION

A. Geotechnical data is provided only for information and convenience of Bidders. The Government and Architect disclaim any responsibility for accuracy, true location and extent of geotechnical investigation that has been prepared by others. They further disclaim responsibility for interpretation of that data by Bidders.

(capitalization in original). Even if plaintiff was entitled to rely on the government's December 20, 2010 Report of Geotechnical Investigation, as plaintiff contends it was entitled to do, the report contained the relevant notices regarding the varying, seasonal ground conditions, and explicitly informed bidders that it would be more expensive to conduct the earthwork operations outside of the summer months.

As also indicated above, plaintiff disputes the accuracy of the moisture content measurements provided by the government and offers information provided to plaintiff in two letters from an engineer plaintiff hired to plaintiff (one, a single page letter and the other, a page and one half letter). The government responds that the soil moisture measurements obtained by plaintiff's engineer were for a different depth than the numbers the plaintiff cites from the government's report, and that when comparing soil moisture measurements at the same depth, there is no inconsistency. Regardless, because the government's geotechnical report included with the solicitation contains a clear description of the varying ground conditions and the ramifications of building in different seasons, information offered by plaintiff's engineer regarding the moisture content measurements does not raise a material question of fact or preclude summary judgment. The government did not guarantee specific soil moisture measurements at the time of construction to potential bidders. Rather, in its geotechnical report, the government identified the ground conditions during different seasons, based on a range of soil moisture levels. Plaintiff effectively was on notice, when it submitted its final bid on June 30, 2011, that it was not likely that plaintiff would be able to start construction in the summer months or use the on-site lean clay as engineer fill. Based on the submissions of the parties and the attached documents filed with the court, there is no genuine issue of material fact which would preclude summary judgment.

## CONCLUSION

Defendant's motion for summary judgment is **GRANTED** and plaintiff's complaint is **DISMISSED**, with prejudice. The Clerk of the Court is **DIRECTED** to enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED**.

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**